## State *versus* Luther J. Verrill.

The second clause of § 6, of art. 1, of the constitution of this State requires simply, that all the elements of, or acts necessary to, the crime charged in an indictment, shall be fully and clearly set out.

An indictment for murder need not set out the "manner in which and the means by which" the killing was perpetrated.

An indictment, alleging that the accused, on a day, and at a place named, in and upon the body of a person named, "feloniously, wilfully and of his malice aforethought, did make an assault, and her, the said" person named, "then and there feloniously and of his malice aforethought, did kill and murder," &c., will sustain a verdict of guilty of murder in the first degree under the statutes of this State.

On Exceptions.

Indictment, founded upon Public Laws of 1865, c. 329,* of which the following is a copy, omitting the merely formal parts:—"That Luther J. Verrill and Clifton Harris, both of Auburn in said county, laborers, on the seventeenth day of January, in the year of our Lord, one thousand eight hundred and sixty-seven, at Auburn aforesaid, in the county of Androscoggin aforesaid, in and upon the body of one Susannah Kinsley, feloniously, wilfully and of their malice aforethought, did make an assault, and her, the said Susannah Kinsley, then and there feloniously, wilfully and of their malice aforethought, did kill and murder, against the peace of said State, and contrary to the form of the statute," &c.

At the arraignment of the accused, Harris pleaded guilty, but Verrill pleaded not guilty, and, upon trial, a verdict of guilty of "murder in the first degree" was rendered against

---

* *Stat. of* 1865, *c.* 329. — "In any indictment for murder it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased."

State *v.* Verrill.

him.   Whereupon his counsel moved that judgment be arrested for the following reasons : —

"1. Because the nature and cause of the accusations, against the said Verrill, are not alleged or set forth in said indictment.

"2. Because the indictment charges the said Verrill with the murder of the said Susannah Kinsley and does not allege, as set forth, 'the manner in which and the means by which' the alleged murder was effected or accomplished, 'fully and plainly, substantially and formally ;' as required by the law of the land.

"3. Because the indictment and the allegations, and matters therein contained, are not sufficient in law to authorize a verdict and judgment against the said Luther J. Verrill. And any enactment of the Legislature of the State of Maine, attempting to legalize an indictment in manner and form as the above, if declared valid, would take away the rights of the accused to demand the nature and cause of the accusation against him ; would deprive him of his liberties and rights, in violation of the law of the land and the express provisions of the constitution of the State of Maine.

"4. Because said indictment is in other particulars informal, uncertain and insufficient in law.

"5. Because the said indictment does not charge the said Verrill with having murdered the said Susannah Kinsley 'with express malice aforethought, or in perpetrating, or attempting to perpetrate a crime punishable by death, imprisonment for life, or for an unlimited term of years,' and is, therefore, an indictment for murder in the second degree only ; but the jury returned a verdict for murder of the first degree, which was unauthorized and void."

The presiding Judge overruled the motion and the defendant's counsel alleged exceptions.

*C. Record & M. T. Ludden,* in support of the exceptions.

In order that a person charged with crime may know the precise nature of the offence, it is necessary to set forth in the

State *v.* Verrill.

indictment the "manner in which and the means by which" the offence was committed. 3 Greenl. on Ev., §§ 10, 130; 1 Bishop on Crim. Procedure, c. 22, on the constitutionality of statutes regulating the indictment. *Rex* v. *Shawin*, 1 East's P. C., 341, cited in 2 Bishop on Crim. Procedure, in note to § 517; 2 Sharswood's Blackstone, page 306 and note 7; 1 Wharton's Am. Crim. Law, § 285, note g; also §§ 364, 370, 373, w. v.; *Ib.* §§ 399, 1067, 8 and 9; also §§ 1059, 1066; *State* v. *Learned,* 47 Maine, 426; *Saco* v. *Wentworth,* 37 Maine, 165; *Commonwealth* v. *Webster,* 5 Cush., 320; *Commonwealth* v. *Fox,* 7 Gray, 585; *State* v. *Conly,* 39 Maine, 78; *People* v. *Aro,* 6 Cal. 207, cited in note to § 1054, 1 Wharton; *Commonwealth* v. *Phillips,* 16 Pick., 211; *Commonwealth* v. *Davis,* 11 Pick., 432; *Lambert* v. *The People,* 9 Cowen, 577. Per Senator Spencer.

While, by the common law, homicide is in two degrees, murder and manslaughter; by the statute of this State it is divided into three degrees, — murder of the first degree, murder of the second degree, and manslaughter, and the punishment in each case varies according to the degree of the offence. By this statute, murder of the first degree is the unlawful killing of a human being "with malice *express* aforethought." R. S. c. 118, § 3.

As the indictment in this case does not allege the murder to have been committed "with express malice aforethought," and so only charges murder in the second degree; the verdict cannot be sustained, as it is for murder of the first degree. 2 Bishop's Criminal Procedure §§ 562–597. Title, "The form of the "Indictment for murder of the first degree, as distinguished from murder of the second degree, under our statutes." *The King* v. *Vandercomb and Abbott,* 2 Leach, C. C., 708; Eastman's P. C., 519, cited in 2 Leading Crim. Cases, by Bennett & Heard, page 542.

*W. P. Frye, Att'y Gen'l, contra.*

The statute of 1865 is not in conflict with § 6 of the "Declaration of Rights." *Cathcart* v. *Com.,* 37 Penn., 108;

State v. Verrill.

1 Wharton's Crim. Law, § 218, and note, also §§ 285 & 302. This statute is a transcript of the statute of Victoria.

The indictment is good, although it does not allege the means, method, or circumstances of the killing. *Murphy* v. *State*, 24 Miss., 591, 594; *Cathcart* v. *Com.*, supra; *Noles* v. *State*, 24 Ala., 672 & 693; *Thompson* v. *State*, 25 Ala., 41; *State* v. *Comstock*, 27 Vt., 553.

The judgment may be a bar to any future prosecution for the same offence. *Com.* v. *Pray*, 13 Pick., 353; *Com.* v. *Stark*, 13 Pick., 307.

R. S., c. 118, §§ 1, 2 & 3, comprehend all degrees of murder, murder in the first degree being nothing more than murder.

It need not appear on the face of the indictment of what degree the murder is, the degree is to be found by the jury. R. S., c. 118, § 4; *Hewes* v. *State*, 8 Humph., 597; *Mitchell* v. *State*, 5 Yerger, 340; 8 Ib., 514; *White* v. *Com.*, 6 Binney, 179, 182; *Com.* v. *Flannagan*, 7 Watts & Sergent, 415, 418; *Com.* v. *Earle*, 1 Wharton's Crim. Law, 525; *Johnson* v. *Com.*, 12 Harris, 366; *Ford* v. *State*, 12 Maryland, 514; *People* v. *Doe*, 1 Michigan, 451; *People* v. *Patten*, 5 Michigan, 1; *Tudy* v. *People*, 6 Michigan, 273; *People* v. *Butler*, 3 Parker's Crim. R., 382; *Newcome* v. *State*, 37 Miss., 383; *Wall* v. *State*, 18 Texas, 682; *People* v. *Murray*, 10 Cal., 309; *State* v. *Dempsey*, 4 Minn., 442; *White* v. *State*, 10 Texas, 206; *People* v. *Lloyd*, 9 Cal., 54; *People* v. *Dolan*, 9 Cal., 576; *Com.* v. *Gardiner*, 11 Gray, 440; *Com.* v. *Greene*, not reported.

DANFORTH, J. — A verdict of "guilty of murder in the first degree" having been rendered against the respondent, he now moves in arrest of judgment, and assigns several causes therefor. The first four are substantially the same, and may be considered as one. The objection to the indictment, assigned in these several causes, is that it does not set out "fully and plainly, substantially and formally, the manner in which and the means by which the alleged murder was effected or accomplished." Formerly, in capital cases, this was held to be necessary, though in crimes of a lower

grade it was not. From an examination of the decided cases, it appears that this distinction was made, not on account of any principle involved in the higher crime different from those of a lower, but solely from the great care and tenderness which judicial tribunals manifested for the life of the citizen. This mode of framing indictments in the higher crimes may be considered, therefore, as having been established rather by precedent and authority than by any legal principle involved. It was, however, soon found that this method served rather to secure the escape of the guilty than the accomplishment of justice. It was often difficult, and sometimes impossible for prosecutors to ascertain the means by which a murder had been effected, when the testimony left no doubt as to the guilty party. In such case the indictment must necessarily be drawn in a great measure from conjecture, and the chances for the escape of the guilty party were greatly increased from the liability of the failure, or variance of the proof as to some of the allegations. To avoid this, the courts have sometimes decided that certain allegations need not be proved, and at other times that a variance between the allegations of means and those proved, as when those proved and those set out were of a similar nature, was not material. Wharton's Amer. Crim. Law, § 1059. Such decisions were clearly a violation of law, or else the law did not require the means to be set out, for it would be very difficult to understand how the allegations in an indictment could give any protection to the accused, if they were not to be proved, and still less could it be so when the prosecutor was permitted to prove others. Thus the courts, feeling bound by ancient precedents and authorities, in their efforts to get rid of absurdities involved in them, were led into decisions almost as absurd. This, the principles of the common law could never require without forfeiting its just title as the perfection of human reason. In this state of the authorities arose the case of *Commonwealth* v. *Webster*, 5 Cush., 295. In this case, it was impossible to ascertain by what means the deceased came to his death, and yet it was very clear, from the testimony,

that he was murdered, and by whom the crime was committed. By the strict rules of ancient pleading there would seem to be no way to avoid the escape of the guilty party, or, so far as the means were concerned, to convict upon conjecture. The prosecuting officer, however, after putting into the indictment several counts in the usual form, perhaps for the first time in the history of capital trials, elected to meet the question fairly, and inserted a count in which the simple elements, or acts constituting the crime, were set out, without any statement of means by which the murder was committed; merely stating that they were unknown. Now it is very clear that this averment of ignorance added nothing to the validity of the indictment. If the rights of the accused, or the principles of law, made it necessary to declare the means, these surely could not be set aside by ignorance. The Court, after consideration, declared that count to be good; and, we apprehend, that decision commends itself to the good sense of every intelligent man. We must, therefore, come to the conclusion that the principles of the common law, notwitstanding ancient precedents and authorities may be to the contrary, require in capital cases only such rules of pleading as pertain to all crimes.

It may properly be that more care is used in the proceedings of a trial where a man's life is at stake, than in one where he is accused of simple larceny. Still, he is entitled to the protection of the great principles of the common law, in the one case as well as in the other; just as in civil trials, more time and more thought will and ought to be expended where a large amount of property is in issue than where a small amount is in dispute. Yet no one ever supposed that the same principles of law were not alike involved in each.

But, to relieve this matter of all doubt, our Legislature wisely enacted the law of 1865, c. 329. The indictment in the case at bar was drawn under this law, and it is not contended that it does not, in all respects, conform to it. It is, however, claimed that the law is not in conformity with

the constitution, which requires, just what a fair interpretation of the common law requires, "that no person shall be held to answer, until the accusation against him is formally, fully and precisely set forth, that he may know of what he is accused, and be prepared to meet the exact charge against him." *State* v. *Learned,* 47 Maine, 432.

This provision applies to all crimes alike of whatever grade, and has always been understood to require simply, that all the elements of, or facts necessary to, the crime charged, shall be fully and clearly set out. It requires no argument to show that "the manner in which and the means by which" a crime has been committed, are no part of the crime itself. The means by which a thing is accomplished, from the very nature of the case, cannot be the thing itself. The way which leads to the end cannot be the end. There are cases where an act may be criminal or otherwise, according to the circumstances under which it is done. If made criminal by the circumstances, then they become constituent elements of the crime and must be set out. Otherwise · they are not a part of the crime and need not be set out. "When circumstances are constituent parts of the offence, they must be set out, but when the crime exists without them, they may be alleged in aggravation, but are not absolutely requisite. The omission of any fact or circumstance necessary to constitute the offence will be fatal." Wharton's Crim. Law, vol. 1, § 285. In the learned and elaborate argument of the prisoner's counsel, it is not even suggested that any element necessary to constitute the crime of murder has been omitted in the indictment under consideration. Nor could such a suggestion have been made with truth, for, in this respect, it is full and complete, containing all that is requisite under the law or constitution. It does not differ in any material respect from the fourth count in the case against Webster already referred to. As the law of 1865 requires all that the constitution requires, and, as a strict compliance with its provisions tends to the advancement of justice, there can be no reason for pronouncing it

invalid. The accused has no reason to complain; certainly not, if he is guilty, even though his chances of escape are diminished; nor if he is innocent, for then he finds no traps from allegations not to be proved, or sustained by proof variant; but the precise charge he is called upon to meet, and just what the government must prove, is fully, formally and clearly set out.

The next objection raised is, that the indictment does not set out a murder in the first degree, and is therefore insufficient to sustain the verdict. This objection was evidently founded upon a mistaken construction of the provisions of the R. S. of 1857, c. 118.

The first section of that chapter defines murder substantially as the common law does. The second and third sections do not in any respect qualify the first, but defines the different degrees of murder. Notwithstanding these provisions, the killing of a human being with malice aforethought is still murder, whether that malice be express or implied. There is still but one crime denominated murder, as at the common law, although by the provisions of the statute there are two degrees of that crime, liable to different punishments. The first degree of murder under the statute is precisely the same as the highest degree at common law. It is not claimed that this indictment is not sufficient in this respect, at common law, to set out the highest degree of murder. On the other hand, it contains apt words for that purpose. The words, "malice aforethought" would ordinarily be understood to express the same idea as "express malice;" and include cases of implied malice, only as the greater includes the less. It is perhaps clear that, under an indictment like this, alleging that the killing was done with "malice aforethought," it would be necessary to prove express malice even at common law, but for the principle of law, that the greater contains the less, or for the other principle of law, that in certain cases malice may be implied with the same effect upon the crime as though express were proved. It would therefore seem necessarily to follow that the indict-

State *v.* Verrill.

ment is sufficient to sustain the verdict. These views are confirmed by the very able opinion of the Court in Massachusetts, in the well considered case of *Green* v. *The Commonwealth*, 12 Allen, 170, and the cases there cited. It is true that the statute of that Commonwealth, in defining murder of the first degree, uses the words "deliberate and premeditated," instead of the word "express," as used in our statute, but this does not in the slightest degree change the principle involved. Nor does it affect the question, that by the Massachusetts statute it is provided that the provision relating to the different degrees shall in no manner require any modification of the existing forms of indictment. Because, under their constitution, as well as under ours, a person can only be held to answer to a charge "duly and technically set forth in apt and proper words." Case of Green, above cited.

In several other States statutes have been enacted similar to ours in relation to both of the questions raised here, and by the courts of those States have been sustained; not only as to the general form of the indictment, but also, so far as known, as to the sufficiency of the common form to sustain a verdict of murder in the first degree.

The provisions of the fourth section of R. S. c. 118, brings us to the same conclusion. By that section, in all cases, the jury or Court are to determine the degree of murder. This clearly would be unnecessary, if the statute contemplated two crimes and different modes of setting them out. For, whatever the crime charged, a verdict of guilty simply is sufficient to convict of that crime. Hence, if the form set out murder in the first degree, or murder in the second degree, if two such crimes existed distinct from each other, a verdict of guilty would be sufficient without stating the degree. Neither objection to the indictment can avail the prisoner and the exceptions must be overruled.                    *Exceptions overruled.*

APPLETON, C. J., KENT, WALTON and BARROWS, JJ., concurred.